Rodney RATLIFF et al., Appellants,

v.

John Jesse REDMON, Appellee.

Court of Appeals of Kentucky.

Nov. 19, 1965.

322

James M. Graves, William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellants.

Robert Matthews, Atty. Gen., Frankfort, for appellee.

HILL, Judge.

The Workmen's Compensation Board found appellee, John Jesse Redmon, was an independent contractor and disallowed his claim for compensation for the loss of sight in his right eye resulting from being struck by flying metal. The Circuit Court reversed the Board on the theory appellee was an employee and not an independent contractor. This appeal followed.

The only question presented by appellants concerns the relationship of appellee at the time of his injury. Was he an independent contractor or an employee?

This Court has not had the benefit of a brief on behalf of appellee; however, one copy of the brief filed with the Workmen's Compensation Board appears in the record. Rule 1.260 authorizes a reversal for failure to file brief, but we have decided to examine the merits of the case.

Appellants, Rodney Ratliff and William Ratliff, brothers and partners doing business as Frankfort Scrap Metal & Auto Parts, employed appellee, John Jesse Redmon, in 1960 primarily to separate copper and brass from other metals. Occasionally, appellee contends, he did other work, such as baling paper, hauling scrap iron, and some personal work for Rodney Ratliff constructing a fence around the home of the latter. When separating metals, he was paid five cents per pound. For the other work, which was not extensive, he was paid $1.25 per hour. Redmon was fifty-two years old when he gave testimony in April 1964. He could neither read nor write. Rodney Ratliff assumed the responsibility in the operation of the partnership and kept the books and records. He is a "college graduate in accounting" and has done "graduate work at the University in accounting and economics."

At the time of the injury to his right eye on October 24, 1963, appellee had vision of only 20/40 in the left eye.

Appellee testified "Rodney" showed and told him what to do; that he used "their" (appellants') tools; that "an old chopping ax and a hatchet" were all that was necessary; that he used "any old kind of tool that you could get by with." He testified that he worked about two or three days out of each week, when metal was available, and did not work for anyone else during the year previous to his injury. He admitted he was paid five cents per pound for copper and brass cleaned or separated. He also testified Rodney Ratliff told him he was covered by compensation.

Appellant, Rodney Ratliff, testified he employed Redmon primarily to clean copper and brass, although he admitted that on rare occasions Redmon did some other work for which he was paid separately. Rodney testified he paid Redmon five cents per pound for cleaning; that Redmon came and went when he pleased, used his own tools, although on cross-examination he admitted some of the tools used belonged to the firm; that he paid Redmon cash part of the time and by check at other times; that when he paid by check the checks were payable to "Redmon Metal Cleaning Service." Redmon stated that the first he knew of such a firm name was once when he went to Perkins' store to get a check cashed.

Ratliff also testified he did not advise Redmon that he, Redmon, was covered by compensation. He also stated he did not carry Redmon on the regular payroll; and that he had offered Redmon regular employment, which was refused; that Redmon was "strictly on his own;" that no one told Redmon "how hard, how slow, or anything about his work;" and that Redmon worked "whenever he took a notion."

Thus, it is apparent there is sharp conflict in the evidence on matters of detail concerning the nature of the relationship between appellants and appellee. However, details become relatively unimportant when the over-all picture is presented.

■ Before attempting to apply the rules of law applicable to the facts of the present case, we should keep in mind the well recognized rule of law in this jurisdiction, that in determining the relationship of employer and employee under the Workmen's Compensation Act a broader and more liberal construction is used favoring employee. See Brewer v. Millich, Ky., 276 S.W.2d 12, 15 (1955), wherein this Court said:

"In answering this question, the approach to be used is that of determining the relation of employer-employee under the Workmen's Compensation Act rather than of master and servant or principal and agent in tort actions. The workmen's compensation approach is broader and uses a more liberal construction favoring the employee. This is in harmony with the purpose of the Act in affording protection to the employee because of his inability to withstand the burdens of injury occasioned by his employment and the resultant loss of work."

The basis for this rule of law is found in KRS 342.004 wherein it is provided: "This chapter shall be liberally construed on questions of law, as distinguished from evidence, and the rule of law requiring strict construction of statutes in derogation of the common law shall not apply to this chapter."

The General Assembly of Kentucky further demonstrated its humane and compassionate consideration for the working class when it enacted KRS 342.050 prohibiting any contract, written or implied, or device calculated to relieve any employer of the obligation created by the Workmen's Compensation Act. We quote it in full:

"Except as provided in this chapter, no contract or agreement, written or implied, no rule, regulation or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this chapter."

That the Act intended *all employees* to be covered is specifically provided in KRS 342.005 wherein it recites: "This chapter *shall* apply to all employers having three or more employes regularly engaged in the same occupation or business, *and to their employes*, * * *". (Emphasis added.)

■ This Court has consistently recognized and followed the general philosophy and purpose of the Workmen's Compensation Act as outlined by the Legislature.

We quote further from Brewer v. Millich, supra, page 16:

> "In Robinson v. Lytle, 276 Ky. 397, 124 S.W.2d 78, 80, the Court said: ' * * * we must look to the philosophy of the Compensation Act in arriving at its proper construction. It was the intention of that Act to place the burden for injuries received upon the industries in which they were suffered rather than upon a society as a whole.' "

The problems resulting from work-connected injuries and deaths have burdened societies from the beginning of civilization. Many of the Roman road builders and early seafarers must have paid dearly for the tasks they performed. Their societies were burdened socially and financially with injured, useless citizens, dependent families, and lost production. With the advent of industrial development, our modern Workmen's Compensation Act has remedied the situation to a great extent so that now we may define workmen's compensation to be: a mechanism for providing cash wage benefits and medical care to victims of work connected injuries, and for placing the cost of these ultimately on the consumer, through the medium of insurance, whose premiums are passed on in the cost of the product.

Kentucky is not alone in legislative and judicial expression broadening the concepts of *employee* relationship and limiting the scope of "independent contractor" relationship, as will be seen in Larson's Workmen's Compensation Law, volume 1, page 623, from which we quote:

> "The term 'employee' is defined by most statutes to include every person in the service of another under any contract of hire, express or implied. Judicial application of this definition to workmen's compensation status problems generally follows the tests worked out by common law distinguishing servants from independent contractors for vicarious liability questions. However, a recognition of the difference between compensation law and vicarious liability in the purpose and function of the employment concept has been reflected both in statutory extensions of the term 'employee' beyond the common-law concept and in a gradual broadening of the interpretation of the term to bring within compensation coverage borderline classes for whom compensation protection is appropriate and practical."

Going now to guidelines generally used to distinguish "employee" situations from "independent contractor" relationships, we quote further from Larson's Workmen's Compensation Law, page 624:

> "In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
>
> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer; and

(i) whether or not the parties believe they are creating the relationship of master and servant."

We shall discuss the foregoing "matters of fact" or factors in the order listed as they apply to the relationship of the parties in the present case:

■ (a) Extent of control. Laying aside conclusions of the parties, we find appellee was at the time of his injury performing work that required little, if any, control or supervision. He was shown a pile of scrap metal and told to separate the copper and brass from all other metals and lug it up to the scales. The only skill required was a knowledge of the difference between these metals, which is usually common knowledge. Of course, appellee could only perform this work when there was metal around to separate, which amounts to automatic control over the period of time worked by appellee. In this connection we quote further from Larson, page 631: "Should he be deprived of compensation because of the vicarious-liability requirement of control of the details of the work? If, then, control of the details of the work should not be the most relevant factor for compensation purposes, which of the listed factors should be? The answer, it is submitted, should be this: *the nature of the claimant's work in relation to the regular business* of the employer." (Emphasis added.) We conclude the factor "extent of control" must be resolved in favor of "employee" relationship.

■ (b) The factor of whether or not the appellee was engaged in a distinct occupation or business must be hastily resolved in favor of "employee" relationship. This short horse is easily curried. There is nothing different or distinct about classifying junk metal. It is the very essence of a profitable junk business. Some metals bring premium prices; others not so much. In fact, separation and classification of metals covers the whole business. That is all there is to it except for weighing the scrap when it arrives to be unloaded, which is usually done by the seller, and then loading and hauling it to market. So, factor (b) must likewise be considered favorable to appellee's contention.

■ (c) The custom in the locality of the particular occupation, with reference to whether the work is usually done under direction of the employer, is a factor denoting the relationship of employee. If the work is usually done by a specialist without supervision, independent contract relationship is indicated.

■ There is no evidence of custom in this case; therefore, it is left to the imagination to determine the weight to be given to this factor. Factors (a) and (b) are so nearly similar to (c) we conclude there is nothing pertaining to separation of junk requiring the services of a specialist without supervision. Therefore, the relationship of "employee" is indicated by factor (c).

■ (d) If special skill is required in the work to be done, the employer is likely to let the work out to an independent contractor. This factor was discussed in connection with factor (a) and must be resolved in favor of appellee.

■ (e) Furnishing tools and a place to work is some evidence favoring employer-employee relationship. All parties concede appellants furnished the place to work. There may be a slight controversy as to who furnished the tools. Appellee testified appellants furnished the tools. Appellant Rodney Ratliff testified on direct examination that Rodman furnished his own tools, but on cross-examination he stated: "He has possibly borrowed some of my tools, but I try to discourage it all I can because they don't take care of any

of them, and I don't furnish tools. The fact of the matter is, not many tools are required." This question and answer exchange occurred on cross-examination of Rodney Ratliff: "Would a knife and screw driver be sufficient to clean metal that you have to have cleaned on your yard?" (Answer) "They would have to have hammers possibly. I am positive they would have a hammer of some sort, and they use other pieces of iron to do the knocking, the tools they use are more or less tools they have made themselves mainly though. As far as cutting, cutting wiring, etc., they do that out of saws, the temper runs better."

We may assume, then, that at least some of the tools and instrumentalities were furnished by the employer. In fact, Redmon used any old tools available along with his two hands and the one good right eye he had before his injury. The facts justify weighing factor (e) in favor of appellee.

■ (f) If the employment has continued for a considerable length of time, and does not have a termination date fixed, the relationship of employer and employee is likely, as distinguished from that of independent contractor. In the case at bar, appellee was employed in 1960, and continued to work for appellants until October 24, 1963. Certainly we think the nature and length of appellee's employment is a strong factor tending to support the proposition that Redmon was an "employee."

■ (g) If the method of payment is by the job or unit of work, the relationship of independent contractor is suggested. If payment is made by the hour or for a period, we may look for an employee. Appellee was paid five cents a pound, sometimes in cash and other times by check payable to "Redmon Metal Cleaning Service." Appellee testified he did not know why the checks were made out in such a fashion. He could neither read nor write, but he no doubt suddenly felt a spectacular elevation in the world of business when his grocer advised him that the check was made payable to such an important sounding firm name. To an auditor or representative of the Internal Revenue Department such evidence of payment would clearly appear to indicate an independent contractor. But let us look further. There are numerous reasons that could have existed for paying appellee for his work by the pound. By so doing appellants could have sought to avoid payment of social security and workmen's compensation premiums on appellees wages; also to be relieved of bookkeeping, from reporting withholding taxes, and possibly city occupational taxes, to say nothing of being able to get value received for their money. A workman can "deadbeat" little time in when he works by the unit.

Of the nine factors under consideration, and we have two more to go, only the "method of payment" factor can be said to favor the relationship of "independent contractor." After careful consideration of all the circumstances, we consider the "method of payment" used in the present case a mere "device" or subterfuge within the meaning of KRS 342.050 to circumvent the provisions of the Workmen's Compensation Act.

■ (h) The "employee" relationship may be expected if the work is a part of the regular business of the employer. As said in connection with our discussion of factor (b), the work Redmon was doing at the time of his injury was an integral and important part of the junk business. For reasons heretofore pointed out, we conclude factor (h) must be resolved in support of appellee's contentions that he was an "employee."

■ (i) What the parties believe with respect to the relationship created is important in determining that relationship. First, we ask the question: What did appellants believe with respect to the relationship thus created? It is fair to assume appellants were striving and hoping to attain the relationship of "independent contractor." But, did they believe it so? Possibly so, for they may have carefully planned the procedure followed. The important consid-

eration is not what one of the parties believed, but what both parties believed from the circumstances. Appellee testified he was told by appellants that he was covered by workmen's compensation, although this is denied by appellant Rodney Ratliff. In view of the low income of appellee and his experience with a previous injury and his great responsibility at home for nine children, we think it is fair to say that a reasonably prudent man would have, under the circumstances, believed he was an "employee" of appellants, and thereby covered by workmen's compensation. He had every reason to expect to be covered. Actually the cost of coverage under workmen's compensation would have been small since his earnings were low.

When viewed in the light of the educational standing of the two parties, their motives, and purposes in the creation of their relationship, we think factor (i) must also be construed most favorable to the relationship of "employee."

It is significant to point out the relative importance to be given the various "factors" discussed above as it is so well and succinctly stated by Larson, supra, page 627:

> "On only one point as to the relative weight of the various tests is there an accepted rule of law: it is constantly said that the *right to control the details* of the work is the primary test." (Emphasis added.)

We are mindful of this Court's limited scope of review of awards of the Workmen's Compensation Board under Locust Coal Company v. Bennett, Ky., 325 S.W.2d 322 (1959), and other authorities. However, when the curtain of conclusions and abstract contentions is removed, there is no substantial conflict in the evidence in this case. This being so, the question is one of law for the courts under Brewer v. Millich, supra. We think appellants' position is clearly a "device" intended to deprive appellee of protective benefits, to which he is entitled. Appellee had no investment in the metal separation business. He was not listed in the yellow pages of the telephone directory or otherwise advertised as a specialist or independent contractor. This record shows the first time Redmon was ever so designated was when appellants conceived the idea by making some of the checks payable to Redmon Metal Cleaners.

We find appellee was an employee within the meaning of the Workmen's Compensation Act. The judgment is affirmed.