Drexell R. DAVIS, Treasurer of the Commonwealth of Kentucky and Custodian of the Uninsured Employers' Fund, Appellant,

v.

Walter Franklin PERKINS, Mary Crutcher, Vincent Logan and Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

Aug. 21, 1981.*

Steven L. Beshear, Atty. Gen., Donald Roney, Paul D. Rehm, Asst. Attys. Gen., Frankfort, for appellant.

Mark E. Gormley, Versailles, Sam McNamara, Frankfort, for appellees.

Vincent Logan, pro se.

Before HOGGE, HOWARD and McDONALD, JJ.

HOWARD, Judge.

This appeal presents only one question that we must consider: was appellee, Walter Perkins, an independent contractor or an employee of appellee, Vincent Logan, when he was injured while rebuilding a tobacco barn on the farm of appellee, Mary Crutcher? If Perkins is found to be an independent contractor, he is not entitled to Workmen's Compensation benefits. We find that Perkins is an independent contractor and reverse the circuit court.

Perkins learned of the barn building project at the local lumber company and travelled to the Crutcher farm seeking employment. There he found Logan who had been hired to build the barn. Logan told Perkins that he, Logan, would have to ask Crutcher if she would pay the $5.00 per hour Perkins thought he deserved because of his experience as a barn builder. Perkins began work by agreement with Crutcher through Logan a few days later. Other details of the agreement will be discussed in the course of this opinion.

The test for determining the status of a worker was set out in *Ratliff v. Redmon*, Ky., 396 S.W.2d 320, 324 (1965):

In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) the extent of control which, by the agreement, the *master may exercise over* the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time of the job;

(h) whether or not the work is a part of the regular business of the employer; and

(i) whether or not the parties believe they are creating the relationship of master and servant.

. . . .

As to which of the enumerated factors is the most important, the Court, quoting from Larson, stated: On only one point as to the relative weight of the various tests is there an accepted rule of law; it is constantly said that the *right to control the details* of the work is the primary test. *Ratliff, supra* at p. 327.

As in *Ratliff*, we shall discuss each factor in the order listed.

(1) *Extent of control.* According to the testimony of Perkins, Logan and the others working on the barn each has skill as a carpenter and four of the men considered themselves particularly skilled at barn building. Perkins testified that he was particularly skilled at the raising of barns and supervised that phase of the project. Perkins also testified as follows:

Q. There's really not much bossing going on on that kind of job, is there?

A. If everybody knows what he's doing, you got two men working here and two over here, and you meet in the middle and you're ready to go, you know.

Q. Was that the way it was on this job?

A. Sure.

Logan testified that the time to start work, lunch time and quitting time was determined by consensus among the work-

ers. He also testified that some of the men took time off during the project but no one asked him for permission and that no one person decided who was to perform what task on a given day. William Frye, one of the workmen, testified as follows:

Q. Who was in charge out there for the construction of the barn . . .

A. We just all worked together.

(2) *Whether Perkins is engaged in a distinct occupation or business.* Perkins is a carpenter, apparently free lance. He heard of an opportunity to ply his skill and followed it up. Unlike the employee in *Ratliff*, where the Court said "[t]here is nothing different or distinct about classifying junk metal," Perkins is an experienced barn builder and carpenter by trade.

(3) *Custom in the locality.* There is no direct evidence on this question, but the cumulative effect of the evidence is to lead one to believe that when building a barn, one would seek out persons experienced in the matter, provide them with the raw materials and let them work out the details as they saw fit.

(5) *Skill required.* From the testimony of the parties involved it is apparent that not only does a barn builder need the usual skills of a carpenter, but special skills in such matters as raising the barn.

(5). *Furnishing of tools and a place to work.* It is undisputed that each of the men provided tools which were pooled to use in the project. Perkins and another man shared the cost of 300 feet of rope to use in the block and tackle. Others provided ladders, saws, and other equipment as needed for their common effort.

(6) *Length of employment.* It is also undisputed that this was a one-shot project. A group of men joined together, pooling skills and tools for a specific project which, when completed, would effectively end their working association. The job lasted only about five weeks, unlike the nearly three years involved in *Ratliff*.

(7) *Method of payment.* If the method of payment is by the job or unit of work, the relationship of independent contractor is suggested. If the payment is by the hour or for a period, we may look for an employee.

*Id., Ratliff*, 396 S.W.2d at 326.

While the above quotation is generally true, we feel the instant case is more nearly analagous to the situation where one calls in a plumber for a specific job and is billed on an hourly basis. The men kept track of their own hours, gave the record to Logan who then took the totals to Crutcher. Crutcher wrote a check for the full amount due to all the men, which Logan had to cash to distribute the wages. Logan testified that he requested separate checks on several occasions but that Crutcher was worried about the possibility of someone altering a check. She issued a check to Logan because she knew him and all of the men knew Crutcher was the source of the wages.

(8) *Connection of work with regular business.* Perkins was found to be the employee of Logan. It seems from the evidence that Perkins and Logan were both engaged in free-lance carpentry.

(9) *Belief that master/servant relationship has been created.* Perkins himself testified that he did not consider himself Logan's employee, rather he felt he was the employee of Crutcher.

We believe that under the *Ratliff* criteria, Perkins was an independent contractor. Perkins and the trial court direct our attention to *Estill County Farm & Home Supply Co. v. Palmer*, Ky., 416 S.W.2d 752 (1967), wherein a skilled carpenter and cement worker was hired by a company to help finish a building. The building was laid out when he began work and he was first paid by the block, then by the hour. There was some supervision on an intermittent basis. No Social Security or taxes were deducted from his wages and he provided no tools or supplies for construction. He was, however, listed on the employer's Workmen's Compensation insurance. The Court there

found the workman to be an employee rather than an independent contractor.

It is our opinion that the instant case is distinguishable from *Estill County* in that the details of the construction of the barn were left to the workers to determine among themselves, each contributing his particular skills and knowledge, as needed. Each man provided his own tools to make a pool of equipment for use in their common effort with Perkins and another man personally investing in rope to use in the raising of the barn without thought of asking Logan for reimbursement. It is undisputed that Logan and Perkins neither thought of Perkins as Logan's employee and that Logan did not have Workmen's Compensation insurance to cover anyone.

It is therefore the holding of this Court that the trial court erred in finding Perkins to be Logan's employee and that the judgment is therefore reversed with directions to reinstate the opinion of the Workmen's Compensation Board.

All concur.