**PURCHASE TRANSPORTATION SERVICES, d/b/a Radio Cab Company, Appellant,**

v.

**ESTATE OF Sharon WILSON, Deceased; Trish Wilson, Administrator; Uninsured Employers' Fund; Denis S. Kline, Acting Arbitrator; Roger D. Riggs, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2000–SC–0509–WC.

Supreme Court of Kentucky.

March 22, 2001.

Herbert D. Liebman, Frankfort, Ben J. Lookofsky, Mayfield, Counsel for Appellant.

Jeffrey Roberts, Murray, Counsel for Appellee Estate of Sharon Wilson.

David K. Martin, Assistant Attorney General, Frankfort, Counsel for Appellee Uninsured Employers' Fund.

**OPINION OF THE COURT**

This workers' compensation appeal concerns whether there was substantial evidence to support a finding that the deceased worker was working as an em-

ployee rather than as an independent contractor at the time she was murdered.

In July, 1996, Sharon Wilson entered into an agreement with Purchase Transportation Services d/b/a Radio Cab Company (Radio Cab) to lease a cab for the purpose of providing taxi service. The agreement provided that Radio Cab would provide liability insurance, maintenance, and licenses for the leased cab and that the decedent would be responsible for "personal, medical, and any other desired insurance." Mrs. Wilson was murdered on August 7, 1997, in the course of her work. This appeal results from claims by her estate and her surviving daughter. A' claim by her surviving spouse was withdrawn. Radio Cab's defense to the claims was that the decedent was an independent contractor and, therefore, was not entitled to workers' compensation coverage.

The pertinent facts are not in dispute and were summarized by the Administrative Law Judge (ALJ) as follows:

Earl Roach, manager of Radio Cab testified in this case. He stated that Purchase Transportation Service Inc. d/b/a Mayfield Radio Cab is a Subchapter S corporation wholly owned by Mr. Roach's wife. Mr. Roach has testified that as manager of the cab company he enters into contracts with the cab drivers. These contracts set out the schedule during which the driver must work, the guidelines of operating the cab, the basis of pay for the driver, the rate charged to customers, and the terms of the use of the cabs. There was no termination date for the completion of the contract. Mr. Roach testified that after subtracting the cost of gasoline[,] the drivers received 50% of the profits from the fares. He said that the rate had been previously raised from 40% to 50% by the cab company. He also testified that the reason for entering into a contract with the drivers was to avoid the requirement of keeping records for social security, social security withholding,

workers' compensation costs and payroll taxes.

George Richmond and Tom Callahan, both cab drivers for Radio Cab Company, testified that taxi cabs were provided by the cab company; the rates were set by the cab company; cabs were dispatched by the cab company; work schedules were arranged by the cab company; log records were kept by the cab company; the cabs were radio dispatched by the cab company and the cab driver had to be available during a specified shift.

After analyzing the evidence pursuant to our decision in *Ratliff v. Redmon,* Ky., 396 S.W.2d 320 (1965), the ALJ concluded that the decedent was working as an employee when she was murdered. The decision was affirmed by the Workers' Compensation Board (Board) and the Court of Appeals. Radio Cab appeals.

 The parties disagree with regard to the appropriate standard of review. In the instant case, the evidence is undisputed. What is at issue is whether the ALJ gave the proper weight to each the nine factors set forth in *Ratliff v. Redmon, supra,* when reaching the legal conclusion that the decedent was working as an employee when she was murdered. Also at issue is whether the ALJ gave proper weight to the various items of evidence when making findings concerning each of the nine factors. In that regard, KRS 342.285 provides that the ALJ is the finder of fact. It prohibits the Board from substituting its judgment for that of the ALJ with regard to the weight of the evidence on questions of fact. A finding of fact is erroneous as a matter of law and may be disturbed on appeal only if it is so unreasonable under the evidence that a contrary finding is compelled. *Special Fund v. Francis,* Ky., 708 S.W.2d 641, 643 (1986). When considering questions of law or mixed questions of fact and law, the reviewing Court has greater latitude in determining whether the findings were supported by evidence of probative value than

when only a question of fact is at issue. *Uninsured Employers' Fund v. Garland,* Ky., 805 S.W.2d 116 (1991).

In *Ratliff v. Redmon, supra,* the Court emphasized that the purpose of Chapter 342 favored a different concept of the term "employee" from that which was applied at common law. In stating its approval of the trend to find employee status in instances where such protection was appropriate, the Court noted that Kentucky was not alone in limiting the scope of independent contractor status with regard to workers' compensation claims. Adopting the test set forth in *Larson's Workers' Compensation Law,* the Court indicated that the following nine factors were to be considered when determining whether a particular individual is working as an employee or as an independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business of the employer; and
>
> (j) whether or not the parties believe they are creating the relationship of master and servant.

*Ratliff v. Redmon,* 396 S.W.2d at 324–25.

In *Chambers v. Wooten's IGA Foodliner,* Ky., 436 S.W.2d 265 (1969), we determined that four of the nine factors were of paramount importance: the nature of the work being performed as it relates to the business of the employer; the extent of control which is exercised by the employer; the professional skill which is required of the worker; and the true intentions of the parties. Those four factors were again set forth in *Husman Snack Foods Co. v. Dillon,* Ky.App., 591 S.W.2d 701, 703 (1979), a decision which emphasized that an employer would not be permitted to force a worker who would normally be considered an employee outside the protection of the Workers' Compensation Act simply because the worker acquiesced in order to obtain the work. We subsequently reiterated that a proper *Ratliff v. Redmon* analysis required a consideration of all four factors. *Uninsured Employers' Fund v. Garland,* 805 S.W.2d at 118–19.

■ In the instant case, the ALJ's analysis of the evidence with regard to each factor may be summarized as follows: (a) Radio Cab controlled both the schedule of the cab driver and the dispatch of the driver to all customers; (b) Radio Cab's only business was that of a taxi company, and the decedent's only work was that of a taxi driver; (c) although being a taxi driver usually does not require supervision, neither is it characterized as specialized work; (d) in view of the fact that anyone over the age of 16 is eligible to obtain a driver's license, no unusual skill is required to be a taxi driver; (e) Radio Cab provided both the cabs and the dispatch radios, the instrumentalities and tools necessary for the work; (f) the contract contemplated an employment of indefinite duration; (g) drivers were paid a percentage of their fares rather than by the hour, an arrangement more akin to payment by the job; (h) the operation of taxis was a regular part of Radio Cab's business; (i) Radio Cab clearly intended "to create an independent contractor circumstance in order to circumvent the payment of withholding taxes, workers' compensation and keeping

payroll records." In concluding that the decedent was working as an employee for the purposes of Chapter 342, the ALJ noted that only the method of payment and the intent of the parties weighed in favor of finding an independent contractor relationship.

Radio Cab focuses upon the evidence that the parties intended for an independent contractor relationship, emphasizing the terms of the contract and the fact that the decedent considered herself to be an independent contractor for the purpose of her income tax returns. It argues that this factor should have been given greater weight. It also focuses upon evidence which would have supported a finding that Radio Cab did not control the details of the decedent's work; however, the ALJ chose to rely upon other evidence and determined that Radio Cab did control the details of the decedent's work. That finding has not been disturbed by the Board and the Court of Appeals. Finally, Radio Cab argues that when determining a worker's status as an employee or independent contractor under the Fair Labor Standards Act of 1966, other jurisdictions apply an "economic reality" test which differs from that set forth in *Ratliff v. Redmon*, *supra*. Its analysis of the evidence under that standard favors its position.

It is clear that the ALJ conducted a proper *Ratliff v. Redmon* analysis and made findings concerning each of the nine relevant factors. We are not persuaded that the finding that Radio Cab controlled the details of the decedent's work was so unreasonable under the evidence which was presented that it must be viewed as being erroneous as a matter of law. *Special Fund v. Francis, supra*. It is clear that Radio Cab's sole business was to provide a taxi service. Although the parties agreed that the decedent was an independent contractor, Radio Cab set the decedent's schedule; it dispatched all her calls; it set the rates she could charge to customers. In view of the foregoing, it is clear to this Court that the weight which was given

to the various factors and the legal conclusion which was reached were proper.

The decision of the Court of Appeals is affirmed.

All concur.