**COMMONWEALTH of Kentucky, UNINSURED EMPLOYERS' FUND, Appellant,**

v.

**Robert GUSSLER, Ray and Juanita Williams, Hon. A. Thomas Davis, Administrative Law Judge and Workers' Compensation Board, Appellee.**

No. 2008–CA–000482–WC.

Court of Appeals of Kentucky.

Aug. 8, 2008.

---

CD. Watson, Assistant Attorney General, Frankfort, KY, for appellant.

Robert G. Miller, Jr., Paintsville, KY, for appellee.

Before CAPERTON and VANMETER, Judges. GUIDUGLI,[1] Senior Judge.

*OPINION*

CAPERTON, Judge.

The Appellant, Commonwealth of Kentucky, Uninsured Employers' Fund (UEF), appeals the February 15, 2008, opinion of the Workers' Compensation Board reversing and remanding the February 8, 2006, opinion and order of Administrative Law Judge Thomas A. Davis (ALJ Davis). On appeal, the UEF argues that the Board erred in overturning the ALJ,[2] thereby excluding Williams' tree harvesting activities from the definition of agriculture. After careful review of the record, we disagree and affirm.

Gussler is a resident of Lawrence County, Kentucky. Gussler described his occupation for the majority of his life as "cutting timber and running a dozer in the woods." Prior to the accident at issue in his claim, Gussler lived on a farm where he and his wife raised tobacco, cattle and hay for their own use. Gussler also worked part-time for Ray Williams (Williams), a neighbor who owned several small farms nearby and who lived there with his wife, Juanita (Mrs. Williams), and their son Robert (Robert). Williams raised some cattle, hay, and tobacco, but had ceased tobacco production sometime before the accident at issue.

Gussler began working for Williams in 1999. His job duties consisted of cutting timber and running a bulldozer, depending on the weather. Gussler would cut timber for Williams in order for Williams to sell it to local sawmills, though some of the cut timber was used to make fencing and buildings for Williams' farm. Williams testified that he would ask Gussler to cut trees for him at times when Williams need-

---

1. Senior Judge Daniel T. Guidugli sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. The Board's decision will enable Gussler, as an employee to apply for workers' compensation coverage potentially payable by UEF.

ed money. Timber was cut in the area of the farm designated by Williams, after which time the cut timber would be transported to a mill.

Gussler averaged approximately $8,000.00 per year while working for Williams, according to the W2 Forms submitted by Williams. Williams maintained a federal ID number for purposes of his logging business, which appeared on Gussler's W2 wage and tax statements from 2000 through 2004. Williams routinely wrote "logging" on the memo portion of Gussler's paychecks.

Gussler occasionally performed farm work for Williams and his son, which included such activities as raking hay, clearing pastures, cutting fence posts, seeding, and transporting cattle to market. However, Gussler testified that for ninety-nine percent of the time, he cut timber. Williams testified that his occupation was both "farming," and being in the "timber business." However, Williams stated that he primarily earns his living from logging and stated that almost all of his 804 acres is comprised of timber.

Williams cut timber for a profit, not for the purpose of clearing land for farming or any other purpose. Williams testified that he maintained a saw mill on his property when Gussler was hired and that he later constructed a "kiln dry" for curing lumber. Williams also testified that he did attempt to cut and market hardwood flooring at one time several years ago, but could not make a go of it and quit.

Williams confirmed that for 99.9% of the time, Gussler performed work for him involving timber. According to Williams, at the time of Gussler's injury, the timber cut from his property was hauled directly to a lumberyard where it was sold. Williams further stated that on at least two occasions in the three years prior to Gussler's accident, he had contracted with other land owners to log timber from their land. Williams testified that he hired Gussler to cut, log, and haul the timber "for resell" and to "make a profit."

Gussler was injured while working on Williams' land on November 9, 2004. On that day, he cut down a tree, which then fell into another tree, causing a large branch to strike Gussler in the left side of the head. Gussler sustained injuries, including facial injuries and skull fractures, brain hemorrhage, right-sided paralysis, vision loss, and other neurological damage. The only functional impairment rating of record was issued by Dr. Kevin Bayes, D.O., in a Form 107 dated March 5, 2005. Dr. Bayes assessed a 40% to 63% whole body impairment for the November 9, 2004 work injury pursuant to the *AMA Guides.* Following the accident, Gussler filed his workers' compensation claim against Williams, his wife, and their son, Robert.

According to Williams, he initially purchased workers' compensation coverage after hiring Gussler, but discontinued the policy after one quarter because it was too expensive. Williams testified that after Gussler's injury, he was fined $1,000.00 by the Office of Workers' Claims for not having workers' compensation insurance. Further, Williams attempted to have Gussler's injury claim paid under his regular farm insurance, but the claim was denied by the carrier on the grounds that the farm policy "just didn't cover that kind of business."

Before the ALJ, the only issues preserved by the parties were coverage under the Act, namely, whether the circumstances in which Gussler was injured fell within the Act's agricultural exemption and average weekly wage. Gussler asserted, and continues to assert before this Court, that he was an employee of Williams' logging business and, therefore,

entitled to workers' compensation coverage and an award of permanent total disability benefits for his injury. In response, the UEF maintains that Williams' logging operation was excluded from workers' compensation coverage under the agricultural exemption to the Act by reason of the fact that Williams was a farmer harvesting trees from the farmland that he owned.

The ALJ issued a decision in this matter on February 8, 2006, dismissing Gussler's claim against the Williams' and the UEF. The ALJ determined that Gussler was Williams' employee and was engaged in logging at the time of the work-related injury. Further, the ALJ found that Williams was the owner of the land where the injury occurred and that said land was principally used for agriculture. On that basis, the ALJ ruled that Williams was exempt from contractor status under KRS 342.610(2) and that Gussler's injury was excluded from coverage as an agricultural exemption under KRS 342.0011(18), KRS 342.630(1), and KRS 342.650(5). In so ruling, the ALJ found that the logging was part of the protected agricultural enterprise and was purely a function of harvesting and farming. Gussler appealed that decision to the Board, along with the October 31, 2007, Order of the ALJ denying his petition for reconsideration.

■ In an Opinion entered on February 15, 2008, the Workers' Compensation Board reversed and remanded to the ALJ. In doing so, the Board first held that Williams was not a "contractor," nor Gussler a "subcontractor," as those terms are intended or defined by the act. *See* KRS 342.610, *Uninsured Employers' Fund v. Garland,* 805 S.W.2d 116 (Ky.1991), and *Ratliff v. Redmon,* 396 S.W.2d 320 (Ky. 1965). Rather, the Board found that Gussler was an employee, and Williams was his employer at the time of the November

9, 2004, accident. Further, the Board disagreed with the ALJ with respect to the agricultural exemption, finding that the logging work performed by Gussler did not meet the definition of "agriculture" as that term is defined by the Kentucky Workers' Compensation Act. It is from that decision that the UEF now appeals.

■ In reviewing decisions of the Workers' Compensation Board, our function is to correct the Board only when we perceive that the Board has overlooked or misconstrued controlling statutes or precedent or committed an error in assessing the evidence so flagrant as to cause gross injustice. *Western Baptist Hospital v. Kelly,* 827 S.W.2d 685, 687–88 (Ky.1992). Having reviewed this matter with that standard in mind, we decline to overturn the Board's decision in this matter.

■ Certainly, any analysis of a workers' compensation issue is necessarily an exercise in statutory interpretation. *Williams v. Eastern Coal Corp.,* 952 S.W.2d 696, 698 (Ky.1997). We must interpret the statute according to the plain meaning of the act and in accordance with the legislative intent. *Floyd County Board of Education v. Ratliff,* 955 S.W.2d 921, 925 (Ky.1997). We ascertain the intention of the legislature from words used in enacting statutes rather than surmising what may have been intended but was not expressed. *Revenue Cabinet v. O'Daniel,* 153 S.W.3d 815, 819 (Ky.2005) (*quoting Flying J Travel Plaza v. Commonwealth of Ky., Transp. Cabinet, Dep't of Highways,* 928 S.W.2d 344, 347 (Ky.1996)).

KRS 342.0011(18) defines agriculture as follows:

"Agriculture" means the operation of farm premises, including the planting, cultivation, producing, growing, harvesting, and preparation for market of agricultural or horticultural commodities

thereon, the raising of livestock for food products and for racing purposes, and poultry thereon, and any work performed as an incident to or in conjunction with the farm operations, including the sale of produce at on-site markets and the processing of produce for sale at on-site markets. It shall not include the commercial processing, packing, drying, storing, or canning of such commodities for market, or making cheese or butter or other dairy products for market;

Certainly, logging is not explicitly mentioned in this definition of agriculture. The question therefore becomes whether the Board, in overturning the ALJ, correctly found that the activities performed by Gussler do indeed constitute logging, and if so, whether they are properly excluded from the definition above.

As the Board correctly notes, KRS 246.010(5) and KRS 337.010(2)(b) are the other two areas of the Kentucky Revised Statutes in which agriculture is specifically defined. Both of these statutes expressly include raising or producing timber or lumbering operations within their respective definitions of agriculture, in contrast to the workers' compensation provision which we are now asked to interpret. In finding as it did, the Board reasoned that as the legislature had specifically included logging in the other two definitions of agriculture and did not include it in the workers' compensation act; the omission was presumed deliberate.

Finding no substantial error with the Board's reasoning in this respect and absent any indication of legislative intent otherwise, we are compelled to agree. As noted by the Board, it is historically true that the harvesting of trees on a regular basis for sale or profit using employees has been considered a "service performed in the course of the trade, business, profession, or occupation of an employer," subject to coverage under Kentucky Workers' Compensation Act. *See* KRS 342.640(4), *Hubbard v. Henry*, 231 S.W.3d 124 (Ky. 2007), *Buckhorn Coal & Lumber Co. v. Georgia Cas. Co.*, 222 Ky. 683, 2 S.W.2d 383 (1928). The question thus becomes whether or not the activities which Gussler performed for Williams could accurately be described as harvesting trees for profit.

To that end, we note that our review of the record indicates that the logging performed by Gussler was not incident to farming. Although it occurred on a farm, it is clearly evident from the testimony of all parties that the logging was not connected to the day to day operations of the farm itself. Having reviewed the case law cited by the UEF, we note that the cases cited include situations in which the trees are cut for use in a specific way on the farm itself.[3] In the instant matter, however, the timber was cut specifically to be sold at market, and was entirely distinct and separate from any farming activity in which Williams might have been engaged. Further, we cannot rely on the UEF's citation to other state's cases on this issue. As those cases interpret statutory workers' compensation schemes which are different from Kentucky's, their definitions of agriculture would also necessarily differ.

Having carefully reviewed the record, we concur with the Board that the evidence clearly indicates that Gussler was employed by Williams to cut timber which was commercially sold by Williams for profit. Williams himself made clear that the timber was removed not to clear the land for other farming purposes, but purely to be sold for profit, which was his main source of income. Indeed, at one point

---

**3.** Though some of the timber was used on the Williams farm to construct fencing and build-ings, such usage appears de minimus in contrast to the overall timbering operation.

during the time in which he employed Gussler, Williams kept both a saw mill and a kiln dry on his property in conjunction with his logging operations. Williams wrote "logging" on the checks he made payable to Gussler and conceded that he had a federal tax ID number solely in conjunction with his logging pursuits.

In light of the foregoing, we concur with the Board that the work which Gussler was performing for Williams on November 8, 2004 was logging, which we do not believe to be "agriculture" as that term is defined by the Kentucky Workers' Compensation Act. Having thoroughly reviewed the record, we cannot find that the legislature intended the definition of "agriculture" under KRS 342.0011(18) to be so wide-ranging as to encompass the harvesting of trees by a farmer in every situation regardless of the circumstances. Accordingly, we find the Board's decision to reverse the Opinion and Order of the ALJ to be supported by substantial evidence of record and, therefore, affirm the order of the Board remanding to the ALJ for additional proceedings.

ALL CONCUR.