**Bobby HUBBARD, d/b/a B & H Logging, Appellant**

v.

**Terry Wade HENRY; Uninsured Employers' Fund; Honorable R. Scott Borders, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2006–SC–000750–WC.

Supreme Court of Kentucky.

Aug. 23, 2007.

Donald Duff, Frankfort, KY, and Glenn L. Greene, Jr., Harlan, KY, Counsel for Appellant, Bobby Hubbard d/b/a B & H Logging.

Ronald Scott Wilder, Gambrel & Wilder Law Offices, PLLC, Richmond, KY, Counsel for Appellee, Terry Wade Henry.

David K. Martin, Assistant Attorney General, Frankfort, KY, Counsel for Appellee, Uninsured Employers' Fund.

## OPINION OF THE COURT

KRS 342.640 lists various kinds of workers that Chapter 342 considers to be employees. The claimant's injuries occurred while he was working for Bobby Hubbard d/b/a B & H Logging, without pay, in order to demonstrate his ability as a timber cutter before being hired. An Administrative Law Judge (ALJ) dismissed his application for benefits after finding that he had not been hired, was not working under an implied contract of hire and, therefore, was not an employee as defined by KRS 342.640(1). The Workers* Compensation Board (Board) held that a worker injured while performing services on behalf of an employer for hire is an employee under KRS 342.640(4), regardless of whether there is a formal contract of hire or agreed-upon wage. Having determined that no exemption found in KRS 342.750 applied, the Board reversed and remanded for the entry of an award. The Court of Appeals affirmed, and we affirm.

Hubbard, a licensed master logger, leased the right to harvest timber from landowners. He usually employed four workers to operate a bulldozer and cut and load the timber. He stated that they entered into written employment contracts; that they worked as independent contractors and supplied their own saws, chaps, and safety equipment, while he provided the dozer, skidder, gasoline, chains, and files; that he paid them weekly, in cash, for days worked; and that he did not withhold taxes or issue a Form 1099.

The claimant had operated a bulldozer and cut timber for about ten years. He responded to an ad that Hubbard placed in a local newspaper for someone experienced in such work, and they met on November 19, 2004. Because Hubbard wanted to be certain that he could perform the job, the claimant agreed to work on a trial basis for a couple of days and to receive no pay unless Hubbard was satisfied with his work. He recalled that they discussed pay of either $10.00 per hour or $100.00 per day and stated that Hubbard never told him he would be hired as an independent contractor. The claimant testified that they went to the jobsite and that Kenny Farmer gave him a saw and other equipment. Hubbard left the jobsite after he cut some trees, and he thought that Hubbard was satisfied with his work because they fired another timber cutter and sent him home. The claimant testified that he cut a number of poplars, one of which fell into a sycamore tree. Farmer then showed him how to do a hinge cut, and a branch from the sycamore struck him on the head, injuring him severely. He later asked Hubbard to pay him for the day that he worked, but Hubbard refused. He gave him some money later but did not say that it was payment for the work.

Hubbard acknowledged that the claimant was injured while working at his jobsite but testified that he did not hire him, had no signed agreement with him, and did not discuss what the claimant would earn if hired. He stated that he and Farmer watched the claimant cut a few trees and that, asked what he thought, Farmer replied, "Well he looks like he might be all right, I'll watch him." Hubbard stated that the injury occurred at about 4:00, p.m., after he left the site. He acknowledged that, on the morning of the accident, he had fired two individuals who had been working on a trial basis.

Eric Carnes, Lester Fugate, and Kenny Farmer testified that they worked for

Hubbard on the date of the claimant's injury. When deposed, Carnes and Fugate no longer did so. All three testified that they worked as independent contractors.

Carnes recalled the claimant stating that he was working on a trial basis to show that he could do the job and recalled observing him cut two or three trees with Farmer's saw. He did not hear Hubbard offer the claimant a job or discuss what or how he would be paid if hired. He was not aware that any other workers were hired on a trial basis.

Farmer testified that he gave his own hard hat, chaps, and saw to the claimant to use, then went to inform another timber cutter who was working in the woods that he had been terminated. Farmer recalled that after the claimant cut a few trees, Hubbard asked his opinion and that he replied, "Well, I don't know until we see him cut for a while." Hubbard advised him that the claimant was not hired and was working on a trial basis only. Farmer testified that approximately 15 people had been brought in on a trial basis during the year that he had worked for Hubbard, but none of them stayed on the job. He did not know whether Hubbard paid any of them. He also testified that Hubbard left the site and that the claimant cut some poplar trees improperly, causing them to fall into some sycamores. After explaining the proper way to notch a tree to control where it falls, Farmer notched and cut one of the sycamores. He thought that the claimant was in the clear, but a limb from the falling tree hit him in the head and injured him.

Fugate testified that Hubbard did not furnish any saws or equipment but did furnish some safety equipment. He recalled spending most of the day working near the claimant, topping trees after he cut them. The only conversation he overheard indicated that the claimant hoped Farmer and Hubbard would like his work and hire him. Fugate stated that he watched Farmer cut the sycamore from about 35–40 feet away, which was where the claimant should have been rather than close to Farmer. When cross-examined, he stated that he was never hired on a trial basis, without pay, to show his skills. Nor was he aware that others were. He testified that the claimant told Hubbard he would work for free and that if Hubbard didn't like his work, he didn't have to worry about it.

At the hearing, Hubbard testified that the individual terminated on the date of the claimant's injury was not a good worker. He had decided to terminate the man on the previous day but had no way to reach him until he came to work. He stated that about 10 individuals had worked for him on a trial basis in the previous year. They normally worked for a day, after which he could tell if they could perform the job adequately. Hubbard stated that he gave the claimant some money after the injury but that it came from donations by the church and the men at the jobsite.

To summarize, the claimant asserted that he had been hired and was working as an employee when he was injured. Hubbard raised two alternative arguments before the ALJ: 1.) that the claimant had not been hired and was working on a trial basis only, or 2.) that even if he had been hired, it was as an independent contractor rather than as an employee.

After bifurcating the claim to decide the claimant's status as an employee or independent contractor, the ALJ found his statement that Hubbard had hired him not to be credible and determined that he was working on a trial basis when he was injured. Noting that KRS 342.640(1) and *Kentucky Farm & Power Equipment*

*Dealers Association, Inc. v. Fulkerson Brothers, Inc.*, 631 S.W.2d 633 (Ky.1982), premise employee status on the existence of a contract for hire, the ALJ also determined that the claimant failed to show a meeting of the minds sufficient to impute an implied contract for hire or to show that he expected to be paid for the work that he performed on the date of his injury. Thus, the decision failed to address whether the claimant was hired as an independent contractor.

The claimant's petition for reconsideration requested specific findings regarding the existence of an express or implied contract for hire and regarding his status as an employee or independent contractor under *Ratliff v. Redmon*, 396 S.W.2d 320 (Ky.1965). Upon its denial, he asserted to the Board that the ALJ erred by concluding that there was no implied contract for hire, by concluding that he worked on a trial basis but was not hired, and by failing to determine that he worked as an employee under *Ratliff v. Redmon, supra.*

The Board held as a matter of law that the claimant was Hubbard's employee under KRS 342.640(4), noting the undisputed evidence that B & H was a logging company in the business of harvesting lumber for profit and that, at the time of the claimant's injury, he was harvesting timber at a job site that B & H controlled, pursuant to Hubbard's instructions. Moreover, he did not fall within any of the exceptions to coverage found in KRS 342.650. Having determined that the claimant was entitled to an award of medical benefits, temporary total disability benefits, and perhaps permanent disability benefits, the Board remanded the claim for that purpose.

■ Hubbard's sole argument to the Court of Appeals was that the claimant was not an employee under KRS 342.640(4) because the parties had not agreed to a wage or rate of pay. Appealing to this court, Hubbard asserts that a rule providing coverage for an injury that occurs during a tryout is ill-advised because a tryout provides no service to the employer and because such a rule would require employers to pay insurance premiums for workers they never hired. He argues that a worker's proper recourse for such an injury is through a civil action and notes that the claimant presently has a civil action pending in the Bell Circuit Court. Although he argues, in the alternative, that all of his timber cutters worked as independent contractors and were not entitled to workers' compensation coverage, that argument it is not preserved for our review because he failed to present it to the Court of Appeals.

■ KRS 342.640 states, in pertinent part, as follows:

The following shall constitute employees subject to the provisions of this chapter, except as exempted under KRS 342.650:

(1) Every person, including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, express or implied, and all helpers and assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer;

. . .

(4) Every person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury[.]

KRS 342.650(6) exempts from coverage workers who would otherwise be covered but elect not to be covered. An individual who performs service as an independent contractor in the course of an employer's

trade, business, profession, or occupation has effectively elected not to be covered.

Hubbard challenged the Board's holding to the Court of Appeals, asserting that *Commonwealth of Kentucky, Department of Education v. Smith*, 759 S.W.2d 56, 58 (Ky.1988), requires a contract for hire as the basis for employee status and that the court's use of the term "service for an employer for hire" in reference to KRS 342.640(4) necessarily implies that the parties must have negotiated a specific wage or rate of pay. We note, however, that the argument is at odds with his present assertion that the Court of Appeals erred by relying on *Smith v. Venezian Lamp Co.*, 5 A.D.2d 12, 14, 168 N.Y.S.2d 764 (N.Y.App. Div.1957), for the principle that a an injury during a tryout period is covered. Hubbard emphasizes now that the worker in the New York case had been hired and that the only purpose of the tryout was to determine his pay rate.

■ Under *Kentucky Farm & Power Equipment Dealers Association, Inc. v. Fulkerson Brothers, Inc., supra,* and *Com., Dept. of Education v. Smith, supra,* KRS 342.640(1)-(4) refer to an employee for hire. *Fulkerson* concerned whether gratuitous employment as a director of a nonprofit association created employee status under KRS 342.640(2), which like KRS 342.640(4) makes no reference to a contract of hire. Although the court found it implicit that the legislature intended for the words "executive officer of a corporation" to refer to "an employee for hire," the crux of its decision was the principle adopted from 1C Larson, *Workmen's Compensation Law*, §§ 47.00 and 47.41 (1980), that the term "employee" excludes "workers who neither receive nor expect to receive any kind of pay for their services." Thus, an "employee" under KRS 342.640 must be "an employee for hire" because "[t]he essence of compensation protection

is the restoration of a part of wages which are assumed to have existed." *Fulkerson*, 631 S.W.2d at 635.

*Com., Dept. of Education v. Smith, supra,* concerned whether a prisoner was an employee under KRS 342.640(3) or (4) when working outside the prison walls for a state agency. KRS 342.640(3) includes persons in service to a state agency but explicitly refers to "a contract for hire." Relying on the decision in *Tackett v. LaGrange Penitentiary*, 524 S.W.2d 468 (Ky. 1975), the court determined that a prisoner cannot enter into a contract for hire with the authority by which he is confined and that his labor is the property of the state. The court also noted that a corporate officer who served without pay was not an employee, and found it implicit that KRS 342.640(4) also refers to "an employee for hire."

Arthur Larson and Lex K. Larson's *Larson's Workers' Compensation Law*, (2006), discusses the philosophical and legal bases for determining whether an individual is an employee. Section 64.01 explains that, unlike the common law of master and servant, most compensation acts impose "contract" and "hire" requirements as pre-requisites to employee status, in part to avoid thrusting employee status onto a worker who never consented to it. The law assumes that a worker is in a gainful occupation, and its essence is to restore part of the wages that are assumed to have existed at the time of the injury. Section 65.02[1] explains that the law implies an obligation to pay a reasonable amount for services performed and accepted, even in the absence of an agreement as to pay, unless circumstances negate such an expectation. Section 65.02[2] acknowledges that close cases arise when an injury occurs during a tryout period and advocates no particular rule.

■ Chapter 342 does not, in every instance, base an employer's liability for workers' compensation benefits on the existence of a contract for hire with the injured worker. KRS 342.610(2)(b) deems the employees of an uninsured subcontractor to be employees of an up-the-ladder contractor. If such an employee performs work of a kind which is a regular or recurrent part of the work of a business, it views the business as being a contractor and, therefore, the responsible employer. As explained in *Elkhorn–Hazard Coal Land Corp. v. Taylor,* 539 S.W.2d 101, 103–4 (Ky.1976), the statute's purpose is to protect injured workers by assuring that businesses use only insured subcontractors to perform their regular or recurrent work.

■ KRS 342.640(4) does not refer to a contract for hire. It protects workers who are injured while performing work in the course of an employer's business by considering them to be employees despite the lack of a formal contract for hire, unless the circumstances indicate that the work was performed with no expectation of payment or that the worker was a prisoner. *Kentucky Farm & Power Equipment Dealers Association, Inc. v. Fulkerson Brothers, Inc., supra; Com., Dept. of Education v. Smith, supra.* Contrary to the employer's argument, work performed during a tryout benefits both parties. It enables the worker to demonstrate skills, and it gives the employer a tangible measure of the worker's ability to perform the work. Sometimes it also gives the employer a usable or saleable product.

It was undisputed that the claimant cut trees throughout the day of his injury; that the work was in the course of Hubbard's business; that it was a tryout; that Hubbard would owe him nothing if dissatisfied with his work; and that he would be hired unless Hubbard was dissatisfied.

Although there was evidence that some of the trees the claimant cut fell improperly, Farmer did not state that he would have discouraged Hubbard from hiring the claimant. Likewise, Hubbard did not indicate that he was dissatisfied with the claimant's work or would not have hired him had he not been injured. Under the circumstances, the evidence compelled a finding that the claimant was Hubbard's employee under KRS 342.640(4).

The decision of the Court of Appeals is affirmed.

All sitting. LAMBERT, C.J., and CUNNINGHAM, MINTON, NOBLE, SCHRODER and SCOTT, JJ., concur.