# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  AUGUST 24, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0488-WC

JAMES RAY FOLEY                                                                    APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2021-CA-0785
WORKERS' COMPENSATION NO. 2020-00322

PEGASUS TRANSPORTATION/CRST                                        APPELLEES
INTERNATIONAL; INDEMNITY
INSURANCE OF NORTH AMERICA;
HONORABLE THOMAS G. POLITES,
ADMINISTRATIVE LAW JUDGE AND
WORKERS' COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**
**AFFIRMING**

This appeal concerns whether the Court of Appeals erred in affirming the

Workers' Compensation Board (Board) which had unanimously affirmed the

Administrative Law Judge's (ALJ) opinion dismissing James Ray Foley's

workers' compensation claim on the basis that Foley was not an employee of

Pegasus Transportation/CRST International (Pegasus) under Kentucky's

Workers' Compensation Act[1] at the time he was injured while operating a

pickup truck rented for his use by Pegasus.

---

[1] Kentucky Revised Statutes (KRS) Chapter 342.

Foley appeals to this Court as a matter of right. *See Vessels v. Brown-Forman Distillers Corp.*, 793 S.W.2d 795, 798 (Ky. 1990); Ky. Const. § 115. After review of the record and arguments of the parties, we affirm the Court of Appeals.

## I. FACTUAL AND PROCEDURAL HISTORY

In March 2018, Foley applied for a truck driver position with Pegasus through an online recruiting service. Foley filled out an application, showed proof of his commercial driver's license, filled out a W-2 and other materials online and passed a background check. The recruiter emailed Pegasus to inform them that Foley was "ready to come to work." According to Foley, it was his understanding that he was hired on March 7, 2018, and "all he had to do was go to Louisville and pick up his [commercial] truck [and] was supposed to complete any other procedures on March 12, 2018, in Louisville."

Foley resided in Corbin, Knox County, Kentucky and Pegasus rented Foley a passenger pickup truck on March 10, 2018, from the Enterprise Rent-A-Car in Corbin. Foley was given the vehicle so that he would not have to leave his personal vehicle in Louisville if he was hired since he would be given a commercial truck from Pegasus which he would drive from their facilities to begin an assigned interstate route.

On March 11, 2018, the day before Foley was to report to Louisville, Foley purchased gas for the rented vehicle and while returning to his home rear-ended a bus carrying a woman's college sports team that had stopped at a railroad crossing. Foley had been distracted by his cell phone which caused the collision. Foley suffered a dislocated right hip with a fracture of the socket, a

2

rib fracture and other injuries requiring helicopter evacuation to the University of Kentucky Medical Center for surgery along with extensive rehabilitation.

On March 6, 2020, Foley filed his claim for workers' compensation benefits. Pegasus disputed that Foley was an employee at the time of the accident. A final hearing in the matter was held before the assigned ALJ on October 8, 2020. Pegasus provided evidence that Foley still had to undergo a drug test in Louisville, take a road test with a truck and trailer and, if he passed the road test, would then go through orientation classes and sign additional paperwork while awaiting the results of the drug screen which could take two to three days. If Foley passed all his tests, he would have then been placed in Pegasus's dispatch system and assigned a truck and route. Testimony was offered that the negative results of the drug testing were a federal requirement prior to employment. Foley himself admitted that he understood that he still had to take a driving test for Pegasus prior to his hiring.

The ALJ issued an opinion and order on January 8, 2021, which dismissed Foley's claim finding there was no employment relationship between Foley and Pegasus at the time of the automobile accident. Foley petitioned the ALJ for reconsideration. The ALJ overruled Foley's motion making two statements supporting his prior ruling which remain at the core of Foley's present arguments:

> The fact remains, as set forth in the Opinion, that the Kentucky Supreme Court seemed to make clear in [*Rahla v. Medical Center at Bowling Green*, 483 S.W. 3d 360 (Ky. 2016)], that injuries that

3

occur during the preliminary aspects of the hiring process are not deemed to have occurred in the course and scope of employment and that is the exact situation the facts here present . . . .

[Foley] also argue[s] that [he] was performing services that benefited [Pegasus] at the time of his injury . . . . At no time was [Foley] performing work for [Pegasus] and as such, [Foley's] Petition on this issue is without basis.

The Board unanimously affirmed the ALJ's determination concluding that substantial evidence supported the ALJ's finding that Foley was only a "potential employee" at the time of the motor vehicle accident and that Foley's own testimony established that, at the time of the accident, he understood that he still needed to complete required testing in Louisville as part of the hiring procedure.

The Board also specifically noted that the record contained substantial evidence which, at least in part, rebutted Foley's argument that when he refueled the leased vehicle, he was in service to Pegasus. The Board stated that the "record clearly contains substantial evidence that the trip during which the MVA occurred benefitted Foley" and noted that the leased vehicle had a full tank of gas when Foley picked it up on March 10, 2018, and that if he needed to refuel the vehicle on March 11th, then the ALJ could draw a "reasonable inference from the evidence [ ] that Foley had consumed enough gas through personal use of the vehicle to require a fill up."

The Kentucky Court of Appeals affirmed the Board's decision stating:

We also conclude that the ALJ's opinion was based on substantial evidence, *i.e.,* "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." [*Smyzer v. B. F. Goodrich Chem. Co.,* 474 S.W.2d 367, 369

4

(Ky. 1971)]. More precisely, the ALJ meticulously discussed the relevant evidence, observed that which favored both parties, and ultimately found Pegasus's evidence most convincing. This is squarely within the province of the ALJ. And having considered the legal authority cited by Foley and discussed by the underlying tribunals, we certainly cannot say that the ALJ's ruling is based on an "incorrect view of the law." [*Fresenius Medical Care Holdings, Inc. v. Mitchell*, 507 S.W.3d 15, 19 (Ky. App. 2016)]. Therefore, we ultimately conclude that the ALJ did not abuse his discretion here.

*Foley v. Pegasus Transp./CRST Int'l.*, 2021-CA-0785-WC, 2022 WL 5265078, at *2 (Ky. App. Oct. 7, 2022) (unpublished).

The matter now stands before this Court following Foley's appeal. Foley argues that: (a) an implied contract for hire arose when Foley was promised employment by Pegasus' recruiters, and he relied on those promises to his detriment; and (b) Foley was an employee by virtue of performing services that benefitted Pegasus at the time of the accident.

## II. ANALYSIS

When reviewing a Board decision, this Court will only reverse the Board's decision when it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice. *See W. Baptist Hosp. v. Kelly,* 827 S.W.2d 685, 687–88 (Ky. 1992).

In order to properly review the Board's decision, this Court must ultimately review the ALJ's underlying decision. This Court must determine whether the ALJ's findings were supported by substantial evidence. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky. 1986).

5

We have defined substantial evidence as "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [people]." *Smyzer,* 474 S.W.2d at 369. In other words, substantial evidence is, "evidence which would permit a fact-finder to reasonably find as it did." *Special Fund,* 708 S.W.2d at 643. The ALJ as factfinder (not this Court and not the Board) has sole discretion to determine the quality, character, and substance of the evidence. *Whittaker v. Rowland,* 998 S.W.2d 479, 481 (Ky. 1999) (citing *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418, 419 (Ky. 1985)). Not only does the ALJ weigh the evidence, but the ALJ may also choose to believe or to disbelieve any part of the evidence, regardless of its source. *Id.* (citing *Caudill v. Maloney's Disc. Stores,* 560 S.W.2d 15, 16 (Ky. 1977)).

## A. Foley's Employment Status with Pegasus

KRS 342.640(1) defines employees as "[e]very person, including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, express or implied, and all helpers and assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer."

Foley invites us to consider the doctrine of promissory estoppel to enforce an implied contract for hire, citing to *UPS v. Rickert,* 996 S.W2d 464 (Ky. 1999). In *Rickert,* a pilot stopped his job search in reliance on what he believed to be the offer by UPS and thereby gave up his option of being employed by another airline during his transitional time. We determined that the jury properly awarded Rickert damages under a theory of fraudulent inducement. We noted

6

that sufficient evidence presented at trial to indicate the only reason UPS promised Rickert a job was to induce him to fly its planes during the transition period. The *Rickert* opinion did not break any new ground in the areas of estoppel or fraud. The proof provided by the plaintiff in *Rickert* is not present in this matter such that we would be compelled to find that Foley was either induced by any fraudulent actions or omissions to utilize the rented vehicle or that there was an implied contract for hire.

Certainly, based upon his conversations with the placement agency, Foley had every reason to believe that he *would have been* hired *if* he presented himself in Louisville on Monday morning for participation in the remainder of the hiring process, perform and pass a road test, pass a drug screen, and complete other paperwork. Foley however did not complete any of these pre-employment tasks and the ALJ correctly ruled that he was not far enough along in the hiring process to be considered an employee as a matter of law. As we determined in *Rahla,* 483 S.W.3d at 363, injuries that occur during the preliminary aspects of a hiring process are generally not deemed to have occurred in the course and scope of employment.

One piece of evidence Foley presented was an Occupational Safety and Health Agency (OSHA) report on March 15, 2018, by Pegasus which listed Foley as an "injured employee." While the person who entered such information was not identified, the document would show that someone at Pegasus believed he was an employee, or that a report was required due to Foley operating a vehicle rented by Pegasus. Such entry though does not mean that the supposition

7

made in the document, that Foley was an "employee" of Pegasus, was true as a matter of fact or law under our statutes. The ALJ considered the OSHA document in the full context of all the evidence presented before concluding that "the subjective belief of the [Foley's] hiring is not credible testimony, and that [Foley] was not even actively participating in the hiring process at the time of the accident, all of which supports a conclusion that an employer-employee relationship was never established between the parties."

Based on the totality of the evidence presented, we cannot state that the ALJ's determination was in error. In fact, the ALJ's determination is supported by substantial evidence. Certainly, Foley could have reasonably expected to be hired and assumed he would pass the road test and drug screen after he traveled to Louisville. However, despite those expectations, he offered no evidence compelling a conclusion that he had in fact been hired by Pegasus and all evidence points to him still falling into the category of an applicant.

**B. Foley Was Not Performing Services for Pegasus at the Time of the Accident**

Foley also argues the ALJ erred in determining that "[a]t no time was [Foley] performing work for [Pegasus]." According to Foley, he was performing work that was "beneficial" to Pegasus, and that his operation of the rental vehicle was work-related. Foley states that the usage of the rental vehicle benefitted Pegasus because its safety manager testified that the company did not want truckers to leave their personal vehicles on Pegasus' property and, as found by the ALJ, "the purpose of renting a vehicle for candidates was to make

8

[Pegasus] an attractive potential employer for potential driver candidates as good candidates were hard to find." In sum, according to Foley, he was using a Pegasus provided vehicle to travel to Louisville at the direction of Pegasus and his [planned] travel to Louisville was a benefit to Pegasus.

KRS 342.640(4) states that "[e]very person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury." In turn, the term injury is defined under KRS 342.0011(1), "injury" is defined as "any work-related traumatic event . . . arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings." "[T]he language, 'in the course of . . . employment', refers to the time, place, and circumstances of the accident, and the words, 'arising out of. . . employment', relate to the cause or source of the accident." *Masonic Widows & Orphans Home v. Lewis,* 330 S.W.2d 103, 104 (Ky. 1959).

In support of his argument, Foley cites to our opinion in *Hubbard v. Henry,* 231 S.W.3d 124 (Ky. 2007), which he asserts established a "broader view" of what actions constitute work performed on behalf of, or to the benefit of, an employer. In *Hubbard,* we affirmed a determination that a worker injured while performing services on a "trial basis" on behalf of an employer, was an "employee" under KRS 342.640(4), regardless of whether there is a formal contract of hire or agreed-upon wage. *Id.* In that matter, it was undisputed that the employer was a logging company in the business of harvesting lumber for profit and that, at the time of the claimant's injury, he was harvesting timber at

9

the direction of the employer at a job site controlled by the employer. *Id. at* 128. We ultimately determined that "work performed during a tryout benefits both parties. It enables the worker to demonstrate skills, and it gives the employer a tangible measure of the worker's ability to perform the work. Sometimes it also gives the employer a usable or saleable product." *Id.* at 130.

Here however, Foley was not operating a commercial truck or making deliveries which is Pegasus's "business," and while he was driving a rented vehicle in Corbin, he was not demonstrating his skills or providing Pegasus a service in the course of its normal business. Pegasus gratuitously providing a potential employee a rental vehicle, and Foley operating that vehicle, cannot be seen here as "work" as the accident did not occur in "course of his employment."

Here, the ALJ determined that Foley, "never performed truck driving work or any other type of service for the Defendant." The fact that Foley never performed truck driving "work" for Pegasus is correct and we do not agree with Foley's assertion that a potential employee operating a vehicle to travel to an employer's location—in order to complete his pre-employment requirements— can be viewed as an employee providing a service to an employer in the course of its business under KRS 342.640(4).

Contrarily, at the time of Foley's accident, his operation of the vehicle would fall more in line with the "going and coming" rule set forth in *Receveur Construction Co./Realm, Inc. v. Rogers,* 958 S.W.2d 18, 20 (Ky. 1997) where we stated:

10

The general rule is that injuries sustained by workers when they are going to or returning from the place where they regularly perform the duties connected with their employment are not deemed to arise out of and in the course of the employment as the hazards ordinarily encountered in such journeys are not incident to the employer's business.

In *Receveur,* the claimant was killed while driving a company vehicle home from a remote job site. Our reasoning in *Receveur* clearly rested on the reason the claimant was driving a company vehicle, as the use of the company vehicle enabled him to avoid a stop at the company office before proceeding to his job site which saved time and allowed him to begin working for the employer earlier in the day. Though the claimaint's use of the company vehicle was a convenience to him, it "was primarily provided for the benefit of the employer." *Id.* at 21.

Here, Foley has demonstrated no exception to this general rule and while he was driving in Corbin getting gas—the day before he was to drive to Pegasus's facilities—he was not providing a service Pegasus. The mere act of "coming to work" is not a service to an employer.

### III.  CONCLUSION

For these reasons, we affirm the Court of Appeals decision which affirmed the Workers' Compensation Board and the ALJ's determination that under the circumstances presented Foley was not entitled to benefits under the Kentucky Workers' Compensation Act.

All sitting.  All concur.

11

COUNSEL FOR APPELLANT:

John F. Kelley, Jr.
Williams & Towe Law Group PLLC


COUNSEL FOR APPELLEES:

Johanna F. Ellison
Taylor L. Oldham
Fowler Bell PLLC


ADMINISTRATIVE LAW JUDGE:

Hon. Thomas G. Polites


WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey, Chairman