RENDERED:  JUNE 6, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1145-WC

CHRISTINE NICOLE FALCONITE                  APPELLANT

v.            PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-23-00878

SHED WISE, LLC.; HONORABLE
GREG HARVEY, ADMINISTRATIVE
LAW JUDGE; UNINSURED
EMPLOYERS' FUND; AND
WORKERS' COMPENSATION
BOARD                                 APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CALDWELL AND L. JONES, JUDGES.

CALDWELL, JUDGE:  Christine Nicole Falconite ("Falconite") petitions for review of a Workers' Compensation Board opinion affirming the dismissal of her

claim upon a determination that Falconite was an independent contractor. We affirm.

## FACTS

Falconite worked for Shed Wise, LLC ("Shed Wise") for several months starting in December 2021. While taking photographs of sheds as part of her work for Shed Wise in late September 2022, Falconite was struck by a car and suffered significant injuries. As noted by the Administrative Law Judge ("ALJ"), "the central question" of this case is whether Falconite was a Shed Wise employee or an independent contractor when the injury occurred. (ALJ Opinion and Order ("ALJ decision"), page 13.)

Certain basic facts about Falconite's work arrangement at Shed Wise appear undisputed. Falconite did not have to work set hours at Shed Wise and she could come and go as she pleased. Her work consisted of a mix of sales, clerical work, paying bills, and marketing. She had authority to write checks (including her own paychecks). She also took photographs for and operated Shed Wise's social media accounts and website. She was issued a company cell phone and a company credit card with her name on it. She used a company computer at the office. However, she also bought an iPad (tablet) with her personal funds which she used to take photographs for Shed Wise.

Falconite was initially paid $400 per week, which was later increased to $500 per week. She also earned a five percent (5%) commission for any sales she made. Rather than a W-2, she received a 1099 from Shed Wise for tax years 2021 and 2022.

In addition to working for Shed Wise, Falconite worked as a restaurant server. She also did some social media projects for other businesses owned and/or operated by two relatives of the owner of Shed Wise, Brent Arnold ("Arnold").

Despite these largely undisputed facts, Arnold and Falconite testified to having different understandings of whether Falconite was an employee of Shed Wise or an independent contractor.

Falconite testified to thinking she was an employee, partly based on her recollection of Arnold's talking about putting her on the payroll after the first of the year. (Falconite only worked for Shed Wise for about a month during tax year 2021; she worked for Shed Wise for several months in tax year 2022.) She thought being on the payroll connoted being an employee. Falconite viewed her position at Shed Wise as being primarily an office manager and she testified to working 30 to 35 hours per week for Shed Wise.

In contrast, Arnold testified to hiring her primarily for social media work and viewing her as an independent contractor. He testified he thought she

-3-

worked 20 to 25 hours a week for Shed Wise. He stated Shed Wise was a small venture not yet earning a profit and testified to perceiving no sufficient need or money to hire an employee. Arnold also testified to hiring Falconite to allow her to earn money without a rigid work schedule by hopefully increasing sales through social media marketing.

Falconite acknowledged she received 1099 earning statements rather than W-2s for the work she performed at Shed Wise. She explained she used 1099s issued by Shed Wise to file her taxes rather than W-2s simply because "you can't enter in a W-2 that you don't have." (ALJ decision, page 7.) She also indicated she had some understanding of the difference between employees and independent contractors, noting she prepared advertisements for Shed Wise to seek independent contractors to perform other work.

Both Falconite and Arnold discussed the fact that she wrote her own paychecks in their testimony. Falconite testified to writing her checks for less than the agreed-upon payment amounts since she thought taxes were being withheld. Arnold admitted being aware of her writing her checks for less than the full agreed-upon amount, but he testified to assuming that was something she chose to do for tax purposes. (Apparently no tax withholdings were held in a separate account or paid to tax collection agencies during the period Falconite worked for Shed Wise, however.) Falconite and Arnold did not discuss the reductions in pay

-4-

amount until after Falconite was struck by the car in September 2022. Arnold continued to pay Falconite through November 2022.

In December 2022, Falconite asked Arnold for the money withheld from her checks totaling about $3,000. He agreed to pay her that sum over several payments so she would get the full amount he had agreed to pay. Shed Wise then issued her a 1099 rather than a W-2 for tax year 2022.

In early September 2023, Falconite filed a workers' compensation claim against Shed Wise. Shed Wise did not have workers' compensation insurance, so the Uninsured Employers' Fund ("UEF") was later joined as a party. Shed Wise offered as an exhibit an Affidavit of Exemption signed by Arnold in April 2022, stating that no workers' compensation insurance was necessary because Shed Wise had no employees.

The case was later bifurcated to allow the ALJ to first resolve whether Falconite was an employee covered by the Workers' Compensation Act or an independent contractor. After hearing proof, the ALJ determined Falconite was an independent contractor and dismissed her claim. Acknowledging that Falconite was economically dependent on her work at Shed Wise, the ALJ still concluded she was an independent contractor based on other factors including lack of control over how Falconite performed her work and Falconite's having special social media skills. (The ALJ acknowledged Falconite's social media skills were

developed through hands-on personal experience rather than specialized training, however.)

Falconite filed a motion for reconsideration, which the ALJ denied. Next, Falconite appealed to the Board. The Board issued an opinion affirming the ALJ's decision ("Board opinion") by a 2-1 vote.

Falconite petitioned this Court for review of the Board opinion. Shed Wise and UEF filed responses to her petition for review. Further facts will be set forth as necessary in our analysis.

## ANALYSIS

### Standard of Review

When the Court of Appeals reviews a Workers' Compensation Board opinion resolving an appeal of an ALJ decision, this Court does not "correct the Board" unless "the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Next, we discuss relevant binding precedent to guide us as we consider Falconite's arguments for reversal.

### Binding Precedent Sets Forth a Six-Part Test for Determining if a Worker is an Independent Contractor or an Employee

Kentucky law generally recognizes that employers are responsible for providing workers' compensation coverage for their employees but not for

independent contractors performing work for them. *See Hubbard v. Henry*, 231 S.W.3d 124, 128-29 (Ky. 2007) ("An individual who performs service as an independent contractor in the course of an employer's trade, business, profession, or occupation has effectively elected not to be covered.").[1]

Recent binding precedent from our Supreme Court sets forth a six-factor "economic realities" test for determining whether a worker was an employee or an independent contractor at the time of his/her injury – with a central focus on the extent to which the worker is economically dependent on the entity he/she is working for at the time of the injury. *See Oufafa v. Taxi, LLC*, 664 S.W.3d 592, 599 (Ky. 2023).[2]

---

[1] As noted in *Hubbard*, 231 S.W.3d at 128, Kentucky Revised Statutes ("KRS") 342.640 recognizes that, subject to exceptions stated in KRS 342.650, various types of workers are considered employees subject to workers' compensation provisions including: "Every person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury." KRS 342.640(4). KRS 342.650(6) recognizes an exemption from workers' compensation provisions for "Any person who would otherwise be covered but who elects not to be covered in accordance with the administrative regulations promulgated by the commissioner[.]"

[2] In *Oufafa*, our Supreme Court noted that the same "economic realities" test for determining whether a worker was an independent contractor or an employee was adopted for Kentucky Wage and Hour Act ("KWHA") cases in *Mouanda v. Jani-King International*, 653 S.W.3d 65, 74 (Ky. 2022). However, our Supreme Court noted that different but related labor laws were at issue in workers' compensation cases versus wage and hour cases. *Oufafa*, 664 S.W.3d at 599.

As recognized in *Mouanda*, 653 S.W.3d at 71, the KWHA defines employees in that context as excluding franchisees and franchisees' employees. *See* KRS 337.010(1)(e). Moreover, the KWHA bears some similarity to the Fair Labor Standards Act, a federal statute which does not explicitly set forth a way to distinguish between employees and independent contractors. Thus, federal precedent has established a six-factor "economic realities" test focusing on economic dependency. *Mouanda*, 653 S.W.3d at 74. Although Kentucky precedent

-7-

The economic realities test requires considering these factors:

1. The permanency of the relationship between the parties,

2. The degree of skill required for the rendering of the services,

3. The worker's investment in equipment or materials for the task,

4. The worker's opportunity for profit or loss, depending upon his skill,

5. The degree of the alleged employer's right to control the manner in which the work is performed, and

6. Whether the service rendered is an integral part of the alleged employer's business.

*Id.*

### Summary of the ALJ's Analysis of Economic Realities Test Factors and the Board's Assessment of this Analysis

As recognized by both the Board majority and the dissent, the ALJ

discussed all six required factors in *Oufafa*, 664 S.W.3d at 599. Regarding the first

factor (permanency of work relationship), the ALJ noted Falconite worked for

Shed Wise for about 9 months but did not have a contract to work for a specific

---

had not previously addressed the distinction between independent contractors and employees in the wage and hour context, our Supreme Court noted that somewhat similar multi-factor tests consistent with the economic realities test had been adopted in the contexts of Kentucky discrimination claims and workers' compensation claims (albeit with additional listed factors for consideration in workers' compensation cases under some prior precedent). *See id.* at 74-75.

-8-

period – instead, her work was "open-ended" and reflected something akin to "traditional at-will employment." (ALJ decision, page 14.) (The ALJ did not explicitly state whether this favored a finding of her being an employee or an independent contractor. But his reference to "traditional at-will employment" may suggest this factor weighs at least slightly in favor of Falconite's being an employee.)

Regarding the second factor (degree of skill required), the ALJ found Falconite was hired due to her social media marketing skills. Despite acknowledging Falconite did not undergo specific training to develop such skills but instead developed these skills through hands-on personal experience, the ALJ found this factor more indicative of an independent contractor.

Regarding the third factor (worker's investment in equipment for job), the ALJ found this factor not to clearly indicate being an employee or an independent contractor. The ALJ noted Falconite had her own personal smartphone and a company cell phone, used Shed Wise office space and computers with Quick Books, and purchased an iPad (with her own personal funds) which she used to take photographs for Shed Wise.

Regarding the fourth factor (worker's opportunity for profits and/or loss), the ALJ took note both of set payment amounts for each work week (amounting to Falconite's primary income) and Falconite's having the opportunity

to increase her earnings through sales commissions. Construing the 5% commission as a share of profits on sheds sold and reviewing the checks for commissions made to Falconite, the ALJ found this factor to slightly favor a finding of independent contractor status.

Regarding the fifth factor (degree of control over worker), the ALJ noted Falconite's flexible working arrangement and found Shed Wise did not exercise significant control over how Falconite performed her work – for example, noting the lack of metrics to monitor her activities or how effective her efforts were. Also noting Arnold's lack of experience with marketing and social media, the ALJ found Arnold was dependent on Falconite to do her work effectively. The ALJ found this factor strongly indicated Falconite was an independent contractor.

Regarding the sixth factor (whether service rendered was an integral part of the business), the ALJ noted Falconite and Arnold perceived the scope of her work differently – with Falconite seeing herself as an office manager employee and Arnold stating he contracted with her to do social media and sales. The ALJ also noted Arnold's testimony about having run the business by himself prior to hiring Falconite and Arnold's having resumed running the business by himself after Falconite was injured and ceased to work for Shed Wise. He found Falconite provided value to Shed Wise, but her work was not integral to the business

-10-

(manufacturing and selling sheds). The ALJ found this factor to favor independent contractor status.

Lastly, in addition to considering the six specific factors, the ALJ considered the core issue of economic dependency. He acknowledged Falconite appeared to be economically dependent on Shed Wise since she made most of her earnings (about 83 percent) at Shed Wise.[3] He also recognized some of her work duties suggested employee status. However, based on the totality of the circumstances and all six required factors for consideration set forth in *Oufafa*, the ALJ determined that Falconite was an independent contractor. Given Falconite's level of freedom working at Shed Wise, her opportunity to make more money through sales commissions, and her doing work for other entities, the ALJ was persuaded that Falconite was not an employee of Shed Wise but was instead an independent contractor.

Also, the ALJ noted that the work arrangement between Falconite and Shed Wise was different from the complex business arrangement at issue in *Oufafa* (involving a taxicab licensing agreement). While the ALJ characterized the Falconite/Shed Wise arrangement as not complex, after considering the lack of

---

[3] The ALJ's initial decision simply noted that Falconite made most of her earnings at Shed Wise. Falconite pointed to evidence that she earned 83 percent of her earnings in her motion for reconsideration. Explicitly taking note of Falconite's earning 83 percent of her earnings at Shed Wise, the ALJ still concluded that Falconite was an independent contractor in the order denying reconsideration.

control (by Shed Wise or Arnold) over Falconite's work performance, the ALJ determined she had been working as an independent contractor. We note the ALJ did not discuss the tax forms utilized by the parties (*i.e.*, the use of 1099s rather than W-2s) in performing his *Oufafa* analysis.

The Board majority concluded the ALJ appropriately considered all six factors in *Oufafa* and understood each party's arguments. Moreover, even though the majority recognized another factfinder could have interpreted the evidence differently resulting in a different determination of Falconite's work status, the majority concluded Falconite failed to show the evidence compelled a different result. The dissent disagreed, suggesting Falconite's social media skills were not all that unusual, especially for a young person, and rejecting the ALJ's finding that Falconite was running her own social media marketing business.[4] Despite acknowledging the difficult standard for obtaining relief on appeal, the dissent nonetheless concluded the evidence compelled a different result.

---

[4] The dissent also cited authority indicating that a determination of whether a worker was an employee or independent contractor is often a mixed question of fact and law, depending on the degree to which the facts were disputed. *See Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 117 (Ky. 1991). Additionally, the dissent pointed out that a less deferential standard of review applied to questions of law than questions of fact (citing *Purchase Transp. Services v. Estate of Wilson*, 39 S.W.3d 816 (Ky. 2001)). However, despite stating her agreement with the dissent's perception of the ALJ's analysis as being flawed and the evidence as compelling a determination in Falconite's favor, Falconite does not expressly argue on appeal that the facts were essentially undisputed or that the Board's majority improperly applied an overly deferential standard of review.

Having summarized the ALJ's analysis and the Board's discussion, we now turn our attention to Falconite's arguments for reversal.

**Falconite's Argument That All Six Factors Favor Employee Status**

Falconite argues all six factors in the economic realities test adopted by our Supreme Court in *Oufafa* favor her being an employee rather than an independent contractor.

Regarding the first factor (permanency of the employment relationship), she points out the term of her work for Shed Wise was open-ended and not for any limited period.

Regarding the second factor (degree of skill required), Falconite contends the degree of skill required for her Shed Wise work was nothing more than that typically required by most office and sales jobs. She also points out her social media skills were acquired simply by her own personal use of social media.

Regarding the third factor (worker's investment in equipment for the work), Falconite admits she bought an iPad to take photos for Shed Wise since she did not even have a decent camera. But she asserts that otherwise Shed Wise supplied all needed work materials.

Regarding the fourth factor (opportunities for profit and loss depending on skill), Falconite points out her primary form of income from Shed

Wise was her weekly paycheck despite being paid 5% commissions on sheds sold. She also asserts she did not share in the profits or losses of the business.

Regarding the fifth factor (the degree to which the alleged employer controlled how the worker performed work), Falconite points out she had no ownership interest in Shed Wise and she asserts Arnold retained the right to control how she performed her work.

Regarding the sixth factor (whether work performed was an integral part of the business), Falconite points out she staffed the office, paid bills, purchased materials, answered the phone, marketed the sheds on social media and showed and sold sheds to customers. She asserts her work was thus an integral part of Shed Wise's business.

Falconite also emphasizes the focus of the economic realities test is economic dependency and she made 83 percent of her earnings at Shed Wise when she worked there. She contends she was economically dependent on Shed Wise to an overwhelming degree.

Falconite also finds fault with Shed Wise for emphasizing that she filed her tax returns using 1099s rather than W-2s in the workers' compensation proceeding. She contends Arnold's choosing to send her a 1099 after the accident should not be considered of consequence – perhaps suggesting this was self-

serving. She asserts she had no way to force Arnold/Shed Wise to issue her a W-2 and so this was not an election on her part.

**Flaws in ALJ Analysis According to Falconite**

In addition to disagreeing with the ALJ's assessment of each of the six required factors, Falconite generally argues the ALJ's analysis was flawed. Again, it is the Board's opinion which we consider under the standard of review set forth in *Kelly*, 827 S.W.2d at 687-88. However, we recognize the Board's majority did not perceive the ALJ's analysis to be so flawed as to require reversal.

Falconite says the ALJ omits discussion of amounts earned at Shed Wise versus at other places of employment. However, we note the ALJ explicitly took note of Falconite making 83 percent of her earnings at Shed Wise in the order denying reconsideration and still concluded Falconite was an independent contractor – based primarily on her having special social media skills and a large degree of control over how she performed her work.

Falconite asserts the ALJ decision refers eight times to Falconite's performing similar social media services for Frontier Sheds (Arnold's cousin's business) and Arnold's mother, a realtor. Falconite also points to evidence that she only earned a total of $680 from Frontier Sheds in 2022 and that she only worked for Arnold's mother for thirty minutes to an hour a week for a couple of months – for which she was occasionally paid $100. She points out that she did not have an

independent social media marketing business with many clients, and she suggests the ALJ erred in finding her to be a social media expert/entrepreneur.

Falconite points out that six-factor economic realities test in *Oufafa* does not include a factor for consideration concerning the parties' understanding of the work relationship – in contrast to prior precedent which listed as a factor for consideration: "[w]hat the parties believe with respect to the relationship created." *Ratliff v. Redmon*, 396 S.W.2d 320, 326 (Ky. 1965).[5]

In sum, Falconite contends *Oufafa* indicates the parties' perceptions of their working relationship is irrelevant. Yet she points out that much of the ALJ's discussion is about the parties' understanding about their working relationship.

Falconite asserts her entire financial investment in her Shed Wise work was buying the iPad and she suggests the ALJ's finding the worker's investment factor to be a "mixed bag" is ludicrous.

Falconite also finds fault with the ALJ's stating Falconite's work was not integral to Shed Wise's business of manufacturing and selling sheds – expressing incredulity that tasks such as staffing the office, buying supplies, paying

---

[5] Moreover, *Oufafa* expressly backed away from the 9-factor test in *Ratliff*, 396 S.W.2d 320 and a 4-factor test in *Chambers v. Wooten's IGA Foodliner*, 436 S.W.2d 265, 266 (Ky. 1969) – instead, calling for application of the six-factor economic realities test it adopted in a wage and hour case. 664 S.W.3d at 595, 599-600 (citing *Mouanda*, 653 S.W.3d at 74).

bills, advertising, talking with and showing sheds to customers, and selling sheds were not integral to the business.

She also points out the ALJ frequently quoted her testimony on cross examination but never quoted her testimony on direct. She also notes even the Board's majority never explicitly stated agreement with the ALJ and even stated twice that another ALJ might have come to a different determination. She contends the Board deferred to the ALJ simply because he analyzed the factors set forth in *Oufafa*, 664 S.W.3d 592. She argues the dissent was correct in concluding the evidence compelled a determination that she was an employee.

**Falconite's Argument About Effect of ALJ's Determination on Workforce**

Falconite contends the ALJ had an overly broad view of what an independent contractor is. She points out the same ALJ found the claimant to be an independent contractor and dismissed the claim in *Oufafa*. She urges this Court to consider the practical effect of the ALJ's holdings in her case. (Again, it is the Board's decision which we directly review but we recognize the Board did not perceive a reason to disturb the ALJ's decision.)

Falconite asserts it is disingenuous to determine a worker to be an independent contractor when the worker is hired for an indefinite period, is paid a weekly salary plus commissions with taxes withheld, is provided a workplace and tools to perform work including a company cell phone, is issued a company credit

card and has authority to write checks on the business's bank accounts. She contends this means many workers performing sales or clerical work or working at jobs requiring any skills would be considered independent contractors. She asserts this is contrary to the letter and spirit of the Workers' Compensation Act as well as the economic realities test adopted by our Supreme Court.

**Despite Falconite's Arguments, We Must Affirm Board Opinion Under Standard of Review Set Forth in *Kelly*, 827 S.W.2d 687-88**

Binding precedent from our Supreme Court makes clear that we can only disturb Board opinions under very limited circumstances. Here, despite the dissent and Falconite advancing many reasons why some would view Falconite to be an employee rather than an independent contractor at the time of her injury, we cannot say the Board's majority overlooked or misconstrued binding statutes or precedent in affirming the ALJ's decision. *See Kelly*, 827 S.W.2d at 687-88. As pointed out by the dissent and the majority, the ALJ discussed all specific factors and the central question of economic dependency as called for by *Oufafa*, 664 S.W.3d at 599.

Falconite argues the dissent correctly perceived the evidence as compelling a finding in her favor. Moreover, it appears to us that most of the fault Falconite finds with the ALJ's analysis (and more pertinently with the Board's affirmation of the ALJ's decision) amounts to disagreements about how to construe

and weigh the evidence – rather than a clear articulation of how the Board may have overlooked or misconstrued binding authority.

At most, Falconite argues the ALJ overlooked or misapplied the economic realities test in considering the parties' understandings of the work relationships and in not finding her to be an employee despite recognizing she was economically dependent on Shed Wise since she made most of her earnings there. However, while the parties' understanding of the work relationship is not explicitly listed as a factor in the economic realities test set forth in *Oufafa*, *Oufafa* does not expressly forbid any consideration of the parties' understanding.[6] Moreover, the parties' different understandings about the work relationship did not appear to be a key factor in the ALJ's analysis – unlike other factors such as special skills and the degree of control over Falconite's work performance. Lastly, *Oufafa* does not demand determination of employee or independent contractor status based **solely** on the degree of economic dependence in terms of percentage of earnings; instead, it calls for consideration of six specific factors as the ALJ noted. Thus, we do not

---

[6] Oufafa had signed a document which stated that he was not an employee for purposes of workers' compensation when he commenced work, but he later testified he did not understand what this statement meant. 664 S.W.3d at 594. Our Supreme Court made clear that it did not view such written documents about the nature of the work relationship determinative. *Id*. at 598. It directed the case be remanded to the ALJ to re-determine whether Oufafa was an employee or independent contractor, utilizing a 6-factor test which did not include a factor about the parties' intent or understanding unlike prior precedent. *See id*. at 595, 599-600. Nonetheless, our Supreme Court did not expressly forbid any mention or discussion of evidence of the parties' intent or understanding in determining the nature of the work relationship.

perceive that the Board overlooked or misconstrued binding statutes or precedent in affirming the ALJ.  *See Kelly*, 827 S.W.2d at 687-88.

Nor do we perceive that the Board "committed an error in assessing the evidence so flagrant as to cause gross injustice."  *See Kelly*, 827 S.W.2d at 688. The Board took note that Falconite had pointed to evidence of facts which, if taken alone, might lead to a different result – including evidence of economic dependence.  But the Board correctly noted that simply pointing to some evidence which might support a different result is an insufficient basis for the Board to reverse on appeal – particularly since the ALJ found against Falconite, the party with the burden of proof.  *See Greene v. Paschall Truck Lines*, 239 S.W.3d 94, 108 (Ky. App. 2007) (claimant who does not prevail before the ALJ must show evidence compels finding in his/her favor to prevail on appeal).

The Board also correctly stated that it lacked authority to second-guess the ALJ's assessment of the weight and credibility of the evidence or make other conclusions or inferences from the evidence – and must therefore defer to the factfinder (the ALJ) on such matters.  *Miller v. Go Hire Employment Development, Inc.*, 473 S.W.3d 621, 629 (Ky. App. 2015).  Instead, the Board was required to accept the ALJ's factual findings unless not supported by substantial evidence.  *Id*. Ultimately, the Board's majority concluded the ALJ's findings were supported by

-20-

substantial evidence and the evidence did not compel a different result, so it affirmed the ALJ.

Like the Board, we recognize that another factfinder might weigh the evidence presented here differently and perhaps come to a different result. However, we do not perceive that the Board committed an egregious error in assessing the evidence which resulted in gross injustice. *See Kelly*, 827 S.W.2d at 688. Thus, we are compelled to affirm the Board.

That being said, we recognize this case presents some issues which might be more appropriately addressed by our Supreme Court. *See Kelly*, 827 S.W.2d at 688 (recognizing our Supreme Court's function "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude"). For example, we lack the authority to change the list of factors set forth in the economic realities test adopted by our Supreme Court, or to modify *Oufafa* to clearly hold that evidence of economic dependency means a worker qualifies as an employee regardless of any other findings on the six specific factors set forth therein. *See* SCR[7] 1.030(8)(a). However, as the losing party has the right to file an appeal with the Kentucky Supreme Court, KY. CONST. § 115, the parties may raise

---

[7] Rules of the Kentucky Supreme Court.

policy issues and make any arguments for modifying or clarifying *Oufafa* to our Supreme Court if they so choose. And we trust our Supreme Court will provide further helpful guidance on how to properly determine if a worker was an employee or independent contractor at the time of injury.

Further arguments raised by the parties but not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the Board.


ALL CONCUR.


BRIEF FOR APPELLANT:

Rodger W. Lofton
Paducah, Kentucky

BRIEF FOR APPELLEE SHED WISE, LLC:

David K. Homra
R. Brent Vasseur
Paducah, Kentucky

BRIEF FOR APPELLEE UNINSURED EMPLOYERS' FUND:

Clint G. Willis
Assistant Attorney General
Frankfort, Kentucky